IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBIN R. JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CV3217 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM AND ORDER |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Robin R. Jordan ("Jordan"), seeks review of a decision by the defendant, Michael J. Astrue, the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. After carefully reviewing the record, the Commissioner's decision will be affirmed.

I.   PROCEDURAL BACKGROUND

Jordan applied for social security disability benefits on November 19, 2004. Jordan initially claimed his bilateral foot calluses, hammertoes, and flat feet rendered him disabled and unable to work since April 1, 2003. Social Security Transcript ("TR") at 42-43, 66-68, 307. By interrogatory, he amended the onset date to November 19, 2004. TR 121, 308. His application for disability benefits was denied initially on December 22, 2004. (TR 55-58), and upon reconsideration on April 15, 2005. (TR 50-54).

Jordan filed a hearing request on August 16, 2005. (TR 41). A hearing was held before an Administrative Law Judge ("ALJ") on August 21, 2007, and was

continued to and concluded on October 17, 2007. Testimony was received from Jordan, and from a vocational expert ("VE") who appeared at the ALJ's request. Jordan was represented by counsel at the hearing. In addition to the foot problems identified in the plaintiff's initial application, the ALJ heard and considered testimony regarding disabling injuries to the plaintiff's left hand caused by a dog bite that occurred after Jordan filed his application. (TR 22-40, 300-407).

The ALJ's adverse decision was issued on March 24, 2008, (TR 8-21), and Jordan's request for review by the Appeals Council was denied on August 29, 2008. (TR 4-6). Jordan's pending complaint for judicial review and reversal of the Commissioner's decision was timely filed on October 24, 2008. Filing No. 1.

## II. THE ALJ'S DECISION.

The ALJ evaluated Jordan's claims through all five steps of the sequential analysis prescribed by 20 C.F.R. §§ 404.1520 and 416.920, (TR 11-21), and found:

a) Jordan had not engaged in substantial gainful activity since November 19, 2004.

b) Jordan has the following severe combination of impairments: hammer toes, flat feet, bilateral hallux valgus with corns and calluses, and swelling of the left third and fourth fingers.

c) Jordan does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

d) Jordan has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) subject to the following restrictions.

>As to the plaintiff's feet:
>
>>Jordan can stand no more than five minutes at a time, and he should have the ability to wear loose, soft, and flexible shoes.
>
>As to the plaintiff's non-dominant left hand:
>
>>Jordan cannot perform power gripping, cannot use air or vibrating tools, and any gripping and grasping movements are limited to objects weighing no more than a hammer or screwdriver. Jordan has difficulty closing his fingers and maintaining a grip of small diameter objects or tools, and he is limited to occasional use of his left hand for fingering, handling, and feeling. However, he can use his left hand for positioning, stabilizing, lifting, or carrying.
>
>Jordan cannot work at unprotected heights.
>
>Jordan has moderate limits carrying out detailed instructions and mild limits responding to work pressure in the usual work setting, but he can perform jobs learned by simple demonstration.
>
>Jordan is able to respond to changes or interact appropriately with the public, coworkers, or supervisors, can understand and remember short and simple instructions, and has no limits making judgments.

e)  The claimant has past relevant work experience as a buffet server, cook, kitchen helper, laborer, and loader II, but he lacks the residual functional capacity to perform this past relevant work.

f)  Considering Jordan's age, education, work experience, and residual functional capacity, and based on the VE's testimony, Jordan can

perform the job of an "office helper," (DOT 239.567-010), and an "information clerk," (DOT 237.367-022), and both such jobs exist in significant numbers in the regional and national economy.

TR 13-17. The ALJ therefore concluded Jordan is "not disabled," and is not entitled to social security disability benefits. (TR 18).

### III. ISSUES RAISED FOR JUDICIAL REVIEW.

The sole issue raised is whether substantial evidence of record supports the ALJ's finding that Jordan is able to perform work existing in significant numbers in the economy. Specifically, although the VE testified the plaintiff can perform an office helper or information clerk position, the functional requirements of these jobs as described in the Dictionary of Occupational Titles (DOT) exceed the plaintiff's residual functional capacity as found by the ALJ. Jordan claims the VE lacked or failed to present an adequate basis for contradicting the DOT job descriptions, and therefore the ALJ erred when, in reliance on the VE's testimony, he found the plaintiff could perform sedentary, unskilled office helper or information clerk jobs. Jordan further argues the VE lacked a sufficient basis for stating significant numbers of sedentary, unskilled office helper and information clerk jobs exist within the national and regional economy.

### IV. THE RECORD AND PROCEEDINGS BEFORE THE ALJ.

The only issue raised is whether the VE's testimony supports the ALJ's finding at step five of the sequential analysis. Therefore, the court need not, and will not, evaluate steps one through four or the evidence relevant to these steps. The court's review will be limited to the fifth step of the analysis which, in turn, requires comparing the DOT description of an office helper and information clerk with the VE's testimony and the documents and publications upon which he relied.

The ALJ and plaintiff's counsel extensively examined the VE during the social security hearing. (TR 328-401). The ALJ asked the VE to assume Jordan had the residual functional capacity set forth in the ALJ's decision, (see section II, paragraph d above), and if, assuming these facts, the plaintiff could return to his past relevant work. In response, the VE stated Jordan's past employment exceeded sedentary work and Jordan could no longer perform these jobs.

In response to further questioning, the VE testified that the although the DOT lists "office helper" as a light, unskilled position,[1] (see, TR 296 ("STRENGTH: L . . . SVP: 2"))[2], based of the Department of Labor's Standard Occupational Classification ("SOC"),[3] (see, TR 214-224), there are sedentary, light and a few medium jobs within the office helper category. The VE testified the plaintiff could perform sedentary office helper positions, with 63,355 such jobs existing nationally, and 2,840 such jobs existing in the four-state region.[4] TR 335-336, 340. The VE

---

[1] The Department of Labor no longer maintains or publishes the Dictionary of Occupational Titles. The DOT was last updated in 1991. The DOL's "O*Net OnLine" service, accessed at http://online.onetcenter.org, is the current source of information used to determine qualifying work experience. 67 Fed. Reg. 51752-01.

[2] Specific Vocational Preparation ("SVP") is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." TR 298.

[3] The 1980 SOC Manual was prepared through the collaborative efforts of numerous federal agencies and was the culmination of efforts initiated in December 1966. 60 Fed. Reg. 10998. Before the mid-60's, the U.S. Census used one system to "code" or classify employment information, the U.S. Employment Service used another, and other individual federal agencies developed, or were in the process of developing, their own systems. The SOC was created to provide a government-wide occupational classification standard. 60 Fed. Reg. 10998.

[4] The four state region includes Iowa, Nebraska, Missouri, and Kansas. TR 336.

explained a sedentary office helper performs duties such as setting up files, alphabetizing items, stamping and licking envelopes, and sending mail. TR 339.

As to the information clerk position, the DOT describes this job as a sedentary, semi-skilled position. See, TR 297 ("STRENGTH: S . . . SVP: 4"). Acknowledging the plaintiff was unskilled, the VE testified the SOC has identified some sedentary, unskilled jobs within the information clerk job category. TR 397-8. The VE cited, as an example, a person sitting at the front desk of stores like K-Mart and Shopko who greets and provides information to those entering. TR 339. The VE testified there are 98,508 sedentary, unskilled information clerk jobs existing in the nation, and 4,472 such jobs in the four-state region. TR 335-36.

The VE's existing job number testimony was based on information from the Occupational Employment Quarterly ("OEQ"), a publication of United Stat Publishing Company, ("U.S. Publishing"), a private company. TR 348-49. The VE explained the numbers and information published in the OEQ are derived from cross-referencing and statistically analyzing information from various government sources. Through testimony and cross-examination, the VE explained the benchmark for organizing jobs is the census code. The SOC aligned 22 categories or "families" of jobs under the appropriate census code, and every job identified in the DOT is included within (or assigned to) one of the 22 categories.[5] TR 356-58, 367, 381-84.

---

[5]As explained by the Office of Management and Budget in 1995:

> The 1980 SOC Manual includes descriptions of the content of each occupation together with a list of corresponding occupations from the 1977 Dictionary of Occupational Titles (DOT). This list of corresponding DOT occupations formed the basis of the current occupational crosswalks used to link various Federal occupational classification systems. When the revised [Occupational Employment Statistics (OES) system of the U.S.

The VE testified that Labor Market Information Offices located in each state, (e.g. Workforce Development (formerly known as Job Service)), collect data from local employers regarding the existence of jobs, job vacancies, required skill levels, and exertional levels, (TR 350, 358, 373, 383), and this information is then reported to the DOL using SOC codes, not DOT titles or the descriptions published in the DOT supplement, the Selected Characteristics of Occupation (SCO). TR 352, 354, 357-58.[6] However, after the hearing, and with leave of the ALJ, plaintiff's counsel

---

> Bureau of Labor Statistics] was implemented in 1983, a crosswalk was prepared linking it to the 1980 SOC, the 1977 DOT, and the 1980 Census of Population systems. As each system has added occupations, the original crosswalk has been updated to indicate the equivalent occupations in the other systems.

60 Fed. Reg. 10998. As of 1995, the Census system, which collects occupational data from households, identified 501 occupations; the OES, which collects data from establishments, identified 760 occupations; and the DOT, used by the U.S. Employment Service, lists more than 12,000 job titles based primarily on work performed. Id. at 11000.

[6]As explained by the Office of Management and Budget:

All Federal agencies that collect occupational data will use the 1998 SOC. Similarly, all State and local government agencies, as well as private sector organizations, are strongly encouraged to use this national system that provides a common language for categorizing occupations in the world of work. The new SOC system will be used by the Occupational Employment Statistics program of the Bureau of Labor Statistics for gathering occupational information[, will] replace the Bureau of the Census' 1990 occupational classification system[,] will be used for the 2000 Census[, and] will serve as the framework for information being gathered through the Department of Labor's Occupational Information Network (O*NET) which will replace the Dictionary of Occupational Titles (DOT).

submitted information from the Nebraska Labor Information Center ("NLIC") stating the NLIC does not ask employers for information about the number of jobs existing by skill or exertional level. TR 181-82.

Using government information derived from SOC codes, DOT titles, and Census codes, U.S. Publishing publishes a Specific Occupational Selector Manual, (SOSM). This manual provides a "crosswalk" between the information sources. TR 358-59, 372. Every three months, the DOL and local Labor Market Information Offices release employment statistics. U.S. Publishing uses these quarterly statistics and, in coordination with the crosswalk created by the SOSM, produces a report identifying the number of jobs existing nationally and by locality for each DOT title, and within each DOT title, the required exertional and skill level and the number of jobs existing at that exertional and/or skill level. TR 374. This quarterly publication is the Occupational Employment Quarterly ("OEQ"). TR 368, 370-71. See also, http://www.uspublishing.net/references.html.

The VE testified the OEQ is a "benchmark used in the industry nationwide, and has been for years. [VEs] rely upon it, . . . people peruse it, take it apart, and justify whether or not this is using [sic] in the industry, and it is of standard use in the industry especially for Social Security purposes." TR 392. As to placement, the VE testified he has personally used the OEQ and found it reliable. The VE has not and, absent contacting every employer, cannot independently verify the OEQ's published numbers for existing jobs. TR 393.

---

64 Fed. Reg. 53136. On December 23, 2008, the SSA published notice that a panel if being formed to provide guidance on SSA's "plans and actions to replace the Dictionary of Occupational Titles and its companion volume, The Selected Characteristics of Occupations" with an occupational information system ("OIS") tailored specifically for SSA disability programs. 77 Fed. Reg. 78864.

The VE testified that the office helper job is located under census code 586, and according to the OEQ, within the office helper job, there are jobs identified as SVP levels 2 through 7; of the jobs listed, eleven are identified as SVP 2 (unskilled) positions; of the eleven unskilled office helper jobs, three are sedentary; and 63,355 unskilled, sedentary office helper jobs exist nationally, with 2,840 such jobs in the four-state region. TR 335-336, 340, 385, 387-88. The VE further testified the information clerk position is under census code 540; there are fourteen job titles listed under that code, some of which are identified in the OEQ as unskilled positions (SVP 1 and SVP 2); with 98,508 sedentary, unskilled information clerk jobs existing in the nation, and 4,472 such jobs in the four-state region. Examples of sedentary, unskilled information clerks include telephone quotation clerks, and information clerks for motor, railroad, water, and bus transportation. Based on his personal placement experience, the VE knows the bus transportation clerk position is a sedentary, unskilled job. TR 335-36, 397, 399.

The job numbers published in the OEQ include part-time positions. The VE was not aware of how many or what percent of the existing information clerk and office helper jobs are part-time positions. TR 395.

## V. ANALYSIS

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner under Title II, which in this case is the ALJ's decision. A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001).

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant

evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Id. See also, Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001). In other words, "a position can be justified even though it is not correct." Pierce v. Underwood, 487 U.S. 552, 566 n. 2 (1988).

   1. <u>Sedentary, unskilled jobs the plaintiff can perform</u>.

The ALJ found Jordan could perform sedentary, unskilled work, could not return to his past relevant work, but remained able to perform jobs characterized as office helper or information clerk positions. Jordan claims that as defined by the DOT, an office helper is a light, unskilled position and therefore the job requirements exceed Jordan's exertional abilities. As to the information clerk job, Jordan claims this position, defined in the DOT as a sedentary, semi-skilled job, exceeds his skill level.

"[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications. . . ." Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003).

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT.

> When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4p ("Resolving Conflicts in Occupational Information"). The ALJ's decision must explain how any conflict between the VE's testimony and the DOT job description was resolved. SSR 00-4p ("Explaining the Resolution").

In resolving the conflict, the ALJ may consider whether the VE possesses information not listed in the DOT about a specific job. "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000)(citing Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997). These descriptions "may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Id. The DOT's definition of an "occupation" is a collective description of numerous jobs, and information "about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling. SSR 00-4p. "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." Wheeler, 224 F.3d at 897 (citing Hall, 109 F.3d at 1259)).

The OEQ was not the VE's only source for explaining the conflict between the DOT's job descriptions and the VE's testimony regarding the skill and exertion level

-11-

for office helper and information clerk positions. According to the VE, the SOC, published by the Department of Labor, states sedentary, unskilled positions exist within the office helper and information clerk job categories. The VE's testimony was further based on his professional understanding of the type of activities performed by office helpers and information clerks, and his placement experience within the local job market. The VE explained the type of office helper tasks which can be performed with only sedentary levels of exertion, provided examples of unskilled information clerk positions within local retail locations, and cited his personal experience of placing a person in a sedentary, unskilled bus transportation information clerk position. The record developed before the ALJ provided a reasonable basis for crediting the VE's testimony regarding the existence of specific sedentary, unskilled office helper and information clerk positions Jordan can perform, rather than relying solely on the DOT's broad and general characterization of such jobs. See e.g. Dobbins v. Barnhart, 182 Fed. Appx. 618, 619, 2006 WL 1478969, *1 (8th Cir. 2006)(holding the DOT-defined physical "sitting" requirements for a surveillance monitoring job were adequately rebutted by the testimony of a VE who, based on his consultation with potential employers, explained that not all employers require such sitting abilities); Gleave v. Barnhart, 76 Fed. Appx. 142, 144, 2003 WL 22171488, *1 (9th Cir. 2003)(holding that although the DOT classifies telemarketing as a semi-skilled position, that definition was adequately rebutted were the VE's testified that in her many years of research and placing individuals, she had never encountered an instance in which previous work experience made any difference, and people should be able to step into that job without any previous experience or skills obtained from other jobs); Holcom v. Barnhart,79 Fed. Appx. 397, 399, 2003 WL 22422421, *2 (10th Cir. 2003)(holding VE testimony adequately explained any variance between the exertional requirements of the jobs identified by the VE and their descriptions in the DOT where the VE explained that based on her experience in observing these jobs and in placing people in these, the claimant could perform the jobs identified).

2. <u>Number of existing sedentary, unskilled jobs the plaintiff can perform</u>.

Jordan claims there is no reliable evidence of the number of sedentary, unskilled office helper and information clerk positions existing in the market. The plaintiff argues the VE improperly relied on the OEQ, a private publication, as a source for these numbers, while lacking a sufficient understanding of how the OEQ's private publisher accumulated the reported information or calculated the number of jobs existing in each category. Jordan further claims the VE's testimony was not reliable because the VE could not identify the specific sources of the OEQ's information; was incorrect when he stated the Nebraska Workforce Development office collects skill and exertion level data from employers; did not know how many or what percentage of the published job numbers were for part-time positions; and other than reading the OEQ, did no research to determine the number of jobs existing and within Jordan's capabilities.

An ALJ in social security hearings "will take administrative notice of *reliable* job information available from various governmental and *other publications*." 20 C.F.R. § 404.1566(d) (emphasis added). To the extent Jordan claims the VE's testimony failed to show the OEQ is a "reliable" source, as that term is interpreted under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), the argument lacks merit. <u>Daubert</u> and <u>Kumho</u> set forth the court's gate-keeping functions in adversarial proceedings regarding the admission of proffered expert testimony under the Federal Rules of Evidence. The Federal Rules of Evidence do not apply to Social Security administrative hearings, an ALJ is not required to perform the <u>Daubert/Kumho</u> gate-keeping function before expert testimony is elicited at such proceedings, and social security hearings are not adversarial. In short, <u>Daubert</u> and <u>Kumho</u> are not applicable to social security hearings. Bayliss v. Barnhart, 427 F.3d 1211 (9th Cir. 2005); Gangelhoff v. Apfel 2003 WL 22353047, 10 (N.D. Iowa 2003).

An ALJ may rely on materials "published by nongovernmental entities or disseminated by subscription," particularly where the published information is compiled from government sources. Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir.1993)(holding it was not improper for a VE to use the Employment Statistics Quarterly published by United Stat Publishing Company as a source for her job number testimony). As explained in the ALJ's decision, and fully supported by the VE's testimony, the OEQ publishes job numbers, and it derives these numbers by using proprietary computer software which statistically analyzes, organizes, collates, and cross-references ("crosswalks") occupational data from a number of governmental agencies. These governmental agencies include labor offices, including but not limited to Workforce Development offices, located within each state. TR 18. The OEQ numbers do not conflict with the DOT; the DOT lists and describes job titles, but it does not state the number of existing jobs for each title.

The VE testified the OEQ is an industry standard which has been relied on by VEs for years, and has been subjected to industry review to determine whether it is a reliable source, especially for social security purposes. TR 392. Jordan agrees "the [OEQ] software used by the vocational expert has been relied upon for an extensive period of time by vocational experts in the context of Social Security hearings." ( TR 20). The ALJ's reliance on OEQ job number information in social security hearings has been affirmed on judicial review. See, Lawrence v. Astrue, 2009 WL 2178670, 6 (7th Cir. 2009)("[W]e have found no issue with VEs regularly relying on the OEQ."); Liskowitz v. Astrue, 559 F.3d 736, 744 (7th Cir. 2009) (stating the OEQ "does indeed seem to be a source on which VEs customarily rely"); Jones v. Astrue, 2008 WL 4552478, 23 (M.D. Tenn. 2008)(affirming an ALJ decision relying on a VE's job number testimony where the VE explained the numbers came "from the Department of Labor ultimately, but as crunched, if you will, by the U.S. Publishing in its document, The Employment Statistics Quarterly.")

Although the VE could not explain the precise sources for the OEQ's published information or the analysis underlying its published numbers, and the VE may have been incorrect as to the extent of information provided by the Nebraska Workforce Development office in formulating those numbers, the VE testimony provided a sufficient basis to conclude the OEQ is a reliable source of published employment information. While the VE could not testify as to what portion of the published job numbers were part-time positions, "there is no per se rule that part-time work cannot constitute substantial gainful activity." Liskowitz, 559 F.3d at 745 (quoting Kelley v. Apfel, 185 F.3d 1211 (11th Cir.1999)). "[A] VE may. . . testify as to the numbers of jobs that a claimant can perform without specifically identifying the percentage of those jobs that are part-time." Liskowitz, 559 F.3d at 745.

There is sufficient evidence in the record to rebut the DOT classification of an office helper as a light, unskilled position, and an information clerk as a sedentary, semi-skilled position. The VE's testimony, based on the OEQ, provided sufficient evidence supporting the ALJ's conclusion that a significant number of sedentary, unskilled office helper and information clerk positions exist in the national and regional economy.

Upon review of the record as a whole, the court finds substantial evidence supporting the ALJ's decision. Accordingly,

IT IS ORDERED that the findings and conclusions of the ALJ are affirmed.

DATED this 21st day of October, 2009.

> BY THE COURT:
>
> *Richard G. Kopf*
> United States District Judge